UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EURO PACIFIC CAPITAL INC.,
INDIVIDUALLY, AND IN ITS CAPACITY AS
INVESTOR REPRESENTATIVE AND
ATTORNEY-IN-FACT FOR BARBARA SUE
WILSON AND DAVID D. WILSON AS
TRUSTEES FOR THE BARBARA SUE
WILSON TRUST U/A 8/23/94, et. al.,

                            Plaintiffs,

       vs.

YAYI INTERNATIONAL INC.,

                            Defendant.

15 Civ. 00359 (VSB) (KNF)

---

## PLAINTIFFS' OBJECTIONS TO INITIAL RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DATED FEBRUARY 13, 2017

**ANDERSON KILL P.C.**

David Graff, Esq.
Christopher L. Ayers, Esq.
1251 Avenue of the Americas
New York, New York 10020
Tel.: 212-278-1000
Fax: 212-278-1733

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................2

    A.    Supplementation of the Record.................................................................2

    B.    The Investors Are Entitled To The Outstanding Principal Amount
         On The Notes Based On Yayi's Default...................................................5

    C.    The Investors Are Entitled To Interest On The Outstanding Notes........................6

         1.    Investors Are Entitled To Prejudgment Interest As A
              Contractual Right As Defendant Was Aware It Would Be
              Liable For Interest In The Notes ...............................................6

         2.    Interest May Be Awarded In This Matter Under Federal
              Rules Of Civil Procedure 54(c)...............................................9

         3.    Prejudgment Interest For Breach Of Contract Is Mandatory
              Under New York Law...............................................................13

    D.    In The Alternative, If The Investors Are Not Entitled To Interest
         On The Outstanding Notes Then They Respectfully Request
         Leave To Amend The First Amended Complaint To Include A
         Request For Prejudgment Interest In The Demand For Relief. ...........................14

         1.    Legal Standard. .....................................................................14

         2.    There Is No Undue Delay Or Bad Faith. ....................................15

         3.    Plaintiffs' Proposed Amendment Is Not Futile............................17

         4.    There Is No Repeated Failure To Cure Deficiencies By
              Amendments Previously Allowed. ...........................................17

         5.    Yayi Will Not Be Prejudiced By Plaintiffs' Proposed
              Amended Pleading, But To The Contrary, Should The
              Court Deny The Proposed Amendment, The Investors
              Would Be Severely Prejudiced. ...............................................18

         6.    The Court Should Also Set Aside Entry Of Default On The
              First Amended Statement Of Claim As Moot Pursuant To
              Fed. R. Civ. P. 55(C)...............................................................20

    E.    Attorney's Fees and Costs .....................................................................21

CONCLUSION.........................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adrian v. Town of Yorktown*,
___ F.3d ___, 2010 WL 3489553 (2d Cir. Sept. 8, 2010) ......................................................13

*Appleton Elec. Co. v. Graves Truck Line, Inc.*,
635 F.2d 603 (7th Cir. 1980) ................................................................................................11

*Bankers Tr. Co. v. Hartford Acci. & Indem. Co.*,
621 F. Supp. 685 (S.D.N.Y. 1981) ..........................................................................................4

*Billion Tower Int'l, LLC v. MDCT Corp.*,
2010 U.S. Dist. LEXIS 138874, 2010 WL 5536513 (S.D.N.Y. Dec. 10, 2010) ......................2

*Bollag v. Dresdner*,
130 Misc. 2d 221, 495 N.Y.S.2d 560 (Civ. Ct. 1985) ............................................................9

*Dupuis v. 424 E. 77th St. Owners Corp.*,
862 N.Y.S.2d 807 (N.Y. Sup. Ct. 2005) ..................................................................................7

*Ely-Cruikshank Co. v. Bank of Montreal*,
81 N.Y.2d 399, 615 N.E.2d 985, 599 N.Y.S.2d 501 (1993)...................................................14

*GE Capital Corp. v. Bestway Tour & Travel, Inc.*,
2012 U.S. Dist. LEXIS 159861, 2012 WL 5458502 (S.D.N.Y. Nov. 7, 2012)........................2

*Geron v. Pali Holdings, Inc. (In re Pali Holdings, Inc.)*,
491 B.R. 389 (Bankr. S.D.N.Y. 2013)......................................................................................9

*In re Delta Air Lines, Inc.*,
381 B.R. 57 (S.D.N.Y. 2008).................................................................................................24

*IPEC, INC. v. MAGENTA FILMS, LTD.*,
No. 81 Civ. 3341 (MJL), 1983 U.S. Dist. LEXIS 19800 (S.D.N.Y. Jan. 25,
1983) ....................................................................................................................................11

*Keefe, Bruyette &Woods, Inc. v. Atl. Southern Capital Group*,
2012 U.S. Dist. LEXIS 89175, 2012 WL 2551966 (S.D.N.Y. June 27, 2012) ........................2

*Langenberg v. Sofair*,
No. 03-CV-8339, 2006 U.S. Dist. LEXIS 88157, 2006 WL 3518197
(S.D.N.Y. Dec. 7, 2006)........................................................................................................13

*Louis Hornick & Co. v. Darbyco, Inc.*,
2015 U.S. Dist. LEXIS 172635 (S.D.N.Y. Aug. 19, 2015)......................................................2

ii

# TABLE OF AUTHORITIES
(cont'd)

**Page(s)**

*Mazzola v. County of Suffolk,*
143 A.D.2d 734, 533 N.Y.S.2d 297 (N.Y. App. Div. 1988) ...................................24

*N. Bloom Son (Antiques) Ltd. v. Skelly,*
673 F. Supp. 1260 (S.D.N.Y. 1987)........................................................................13

*Pauta v. Aena Mech. Corp.,*
No. 11cv6374, 2014 U.S. Dist. LEXIS 108683 (S.D.N.Y. July 25, 2014) ............12

*Silge v. Merz,*
510 F.3d 157 (2d Cir. 2007)............................................................................11, 12

*Turner Constr. Co. v. American Mfrs. Mut. Ins. Co.,*
485 F. Supp. 2d 480 (S.D.N.Y. 2007).....................................................................13

*U.S. Naval Institute v. Charter Communications, Inc.,*
936 F.2d 692 (2d Cir. 1991)....................................................................................13

**STATUTES**

28 U.S.C. § 636(b)(1) ...................................................................................................2

CPLR 5001......................................................................................................................11

CPLR 5004......................................................................................................................13

CPLR § 5001(b)..............................................................................................................14

CPLR § 5004..............................................................................................................9, 13

**OTHER AUTHORITIES**

10 Charles Alan Wright, Arthur R, Miller, & Mary Kay Kane, Federal Practice
and Procedure, § 2663 (1998).................................................................................10

Black's Law Dictionary ................................................................................................24

Federal Rule of Civil Procedure 72(b).........................................................................1

Federal Rule of Civil Procedure 72(b)(3) ...............................................................2, 3

Federal Rules Of Civil Procedure 54(C).....................................................................10

nydocs1-1082585.4

Pursuant to Federal Rule of Civil Procedure 72(b), Plaintiff Euro Pacific Capital Inc., ("Euro Pacific") individually, and in its capacity as Investor Representative and attorney-in-fact for the "Investors"[1] (Investors and Euro Pacific collectively referred to as "Plaintiffs"), by and through their attorneys, Anderson Kill P.C., respectfully submit this Objection to the Report and Recommendation of United States Magistrate Judge Kevin Nathaniel Fox dated February 13, 2017 ("Initial Recommendation") and supplementation to the inquest record.

## PRELIMINARY STATEMENT

This is a collection action in which Euro Pacific on behalf of its 119 Investors seeks to recover sums due and payable by Defendant Yayi International Inc. ("Yayi" or "Defendant") pursuant to promissory notes (the "Notes") whereby Yayi promised to repay Investors a total of $8,920,000 (the "Principal") at nine percent (9%) interest per annum.  By failing and refusing to make payments under the Notes, provide basic financial information, and acknowledge the rights of its U.S.-based investors, Defendant has materially breached its obligations under the Notes.

Following Defendant's failure to appear in this action, Plaintiffs moved for default judgment.  The Court granted judgment on liability and ordered Plaintiffs to file an inquest on damages.  On July 8, 2016, Plaintiffs filed a Memorandum of Law in Support of Inquest for Damages, Affirmation of Christopher Ayers, Affidavit of Peter Chema and proposed findings of fact and conclusions of law (collectively referred to as the "Inquest"), in support of the damages requested as a result of Yayi's default in this action.  By the Initial Recommendation, the Court recommended that no damages be awarded to Plaintiffs.  A finding and award of no damages would severely prejudice the Plaintiffs and would effectively constitute a dismissal with prejudice, despite the efforts of Plaintiffs to present their claims to this Court and the corresponding default

---

[1] Annexed Graff Supplemental Aff.  as **Exhibit A** is a full list of all Investors in this action.

by Defendant.  This finding would essentially grant Defendant a windfall – forgiveness in an action in which it has refused to appear despite valid service.

Accordingly, Plaintiffs object to the Initial Recommendation and seek to supplement the Inquest record with additional proofs and documentation.  Specifically, Plaintiffs object to 1) the recommendation of an award of no damages for principal and interest on the first cause of action for breach of contract of the Notes[2]; and 2) the recommendation of a finding that an award of attorneys' fees and costs are not warranted.

## ARGUMENT

### A.    Supplementation of the Record

The Court has the authority to consider additional evidence pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("FRCP") 72(b)(3).  Courts routinely allow such supplementation of an inquest record.  *See GE Capital Corp. v. Bestway Tour & Travel, Inc*., No. 09 Civ. 0442 (RA), 2012 U.S. Dist. LEXIS 159861, *4-5, 2012 WL 5458502 (S.D.N.Y. Nov. 7, 2012) (granting plaintiff's motion to supplement the inquest record with an additional declaration pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3)).  *See also Keefe, Bruyette & Woods, Inc. v. Atl. S. Capital Grp.*, 11 Civ. 00810 (AJN) (KNF), 2012 U.S. Dist. LEXIS 89175, *3, 2012 WL 2551966 (S.D.N.Y. June 27, 2012) (initially denying plaintiff's request for royalties, but permitting plaintiff to supplement its inquest with sufficient supporting documentation); *Louis Hornick & Co. v. Darbyco, Inc.,* 12 cv 5892 (VSB) (DCF), 2015 U.S. Dist. LEXIS 172635 (S.D.N.Y. Aug. 19, 2015) (plaintiff's inquest was inadequate and was directed to supplement its inquest submissions to show the basis for its damages calculations or risk a recommendation of no damages); *Billion Tower Int'l, LLC v. MDCT Corp*., 08 Civ. 4185 (LAK)

---

[2] Capitalized terms not defined herein have the same meaning as the First Amended Complaint.

(JLC), 2010 U.S. Dist. LEXIS 138874, *7-8, 2010 WL 5536513 (S.D.N.Y. Dec. 10, 2010) (plaintiff was ordered to provide the Court with additional briefing regarding, among other things, the factual and legal bases for the claims in its initial inquest submission.).  Furthermore, pursuant to FRCP 72(b)(3), "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."

Accordingly, Plaintiffs respectfully seek leave to supplement the inquest record with the Affirmation of David Graff dated March 13, 2017 ("Graff Supplemental Aff.").  The Graff Supplemental Aff. attaches as exhibits the transaction documents that clarify the concern noted in the Court's Initial Recommendation.  More specifically, Plaintiffs intend to supplement the record with all the relevant transaction documents and signature pages for the loans made by each of the 119 Investors in this action.  The purpose is to clarify for the Court the amount owed to each investor and cure any defects the Court identified in the Initial Recommendation.  These supplemental documents will prove that the Plaintiffs are entitled to the damages they seek, i.e., a total of $8,920,000 in principal plus accruing interest (as discussed below) and attorneys' fees and costs.  The Graff Supplement Aff. attaches the executed version of the documents that comprise the entire transaction:

- Chart summarizing the principal amount invested by each Investor[3].
  *See* **Exhibit A**.
- Notes issued to each Investor (collectively referred to as the "Notes").  *See* **Exhibit B.**
- Securities Purchase Agreement ("SPA") signed by each Investor indicating the investment amount.  *See* **Exhibit C**.
- Confidential Private Placement Memorandum, dated August 30, 2010 ("Memorandum").  *See* **Exhibit D**;
- Registration Rights Agreement.  *See* **Exhibit E**;
- Closing Escrow Agreement.  *See* **Exhibit F**;

---

[3] For convenience, the order of the Plaintiffs in the chart corresponds to the Notes and signature pages of each Investor in Exhibits B, C, E, and I.  These documents corroborate the investment amount of each Investor, as well as the maturity date and other relevant terms of the transactions.

- Make Good Escrow Agreement.  *See* **Exhibit G**;
- Disbursement Request.  *See* **Exhibit H**;
- Series F Common Stock Purchase Warrants issued to Investors ("Series F Warrants").  *See* **Exhibit I**;
- Series F Common Stock Purchase Warrants issued to Placement Agent designees.  *See* **Exhibit J**.

Plaintiffs wish to further supplement the Inquest record with additional information regarding the measure of damages owed by Defendant.  Specifically, as shown in the Affidavit of Peter Chema dated January 15, 2015, Yayi made four payments on the accruing interest totaling $1,613,109.  *See* Graff Supplemental Aff. **Exhibit K** at ¶ 10.  These payments have already been credited to Yayi in calculating the final damages on the Notes by subtracting these interest payments from the total accrued interest.  Annexed to the Graff Supplemental Aff. as **Exhibit L** is a chart detailing the outstanding amount owed and crediting Yayi's past payments**.**

Additionally, annexed to the Graff Supplemental Aff. as **Exhibit M** is a chart summarizing the total fees and costs Plaintiffs incurred enforcing their rights under the Notes. Furthermore, annexed to the Graff Supplemental Aff. as **Exhibit N** are true and correct copies of Anderson Kill P.C.'s invoices through July 2016 in this matter.  Lastly, annexed to the Graff Supplemental Aff. as **Exhibit O** are the biographies of the Anderson Kill P.C. attorneys who worked on this matter.

Because Defendant failed to appear in this action, it would suffer no prejudice by the Court accepting and considering Plaintiff's supplemental proofs in connection with its determination of Plaintiffs' damages and objections to the Initial Recommendation.  Indeed, equity and the interests of justice are best served by the Court having a full, complete, and clear record prior to issuing a final judgment.  *See Bankers Tr. Co. v. Hartford Acci. & Indem. Co*., 621 F. Supp. 685 (S.D.N.Y. 1981) ("I am convinced that the interests of justice will best be served by permitting Hartford to make a full and complete record prior to the entry of any final judgment herein.").  The only parties that would be unfairly prejudiced are Euro Pacific and the Investors

4

who are rightfully entitled not only to the principal amount due and owed under the Notes, but also to interest that has accrued and remains unpaid.

**B.      The Investors Are Entitled To The Outstanding Principal Amount On The Notes Based On Yayi's Default**

As set forth in the Inquest and Plaintiffs' preceding papers, on or about September 27, 2010, the Investors and Yayi entered into the Notes whereby Yayi promised to pay Investors the Principal plus interest at nine percent (9%) per annum.  *See e.g.* Doc. 43 ¶ 5. Simultaneously and in conjunction with the Notes, the parties entered into the SPA.  *See* Graff Supplemental Aff., **Exhibits B and C**.  The Initial Recommendation concludes that "no proof exists that the Holder of the Note agreed to the terms of the Note by accepting the Note."  *See* Initial Recommendation p. 21.  As shown in **Exhibit C** to the Graff Supplement Aff., each Investor signed Exhibit A to the SPA accepting the terms of the Note.  The signature pages to the SPA further show that Plaintiffs performed their obligations by raising more the "minimum amount" at the "First Closing".  *See also* Graff Supplemental Aff. **Exhibit A.**   The Initial Recommendation states that "no evidence exists demonstrating the 'First Closing Date' and, consequently the date on which, if at all, the minimum amount was closed that would trigger the maturity date of the Note.... Without the maturity date, no basis exists to calculate the amount of damages."  *See* Initial Recommendation at p. 22.  The SPA defines the "Minimum Amount" as "units equal to at least the amount of $6,000,000 required to be sold at the First Closing within the time period set forth in the Memorandum."   The time period of the Offering pursuant to the Memorandum is the date of the Memorandum (August 30, 2010) "until the earliest to occur of (i) the minimum number of Units is sold in one or more closings, on or around, September 25, 2010; or (ii) the date upon which the Company or the Placement Agent Elect to terminate the Offering." *See* Graff Supplemental Aff., **Exhibit D** at p. 2.  As shown in **Exhibits A-C** to the Graff Supplement Aff., Plaintiffs closed the Offering and fulfilled their obligations pursuant to the Notes

5

and SPA by raising more than the "minimum amount" ($8,920,000) during the Offering period and concluding with the signature of the Notes by Yayi on or about September 27, 2010. Accordingly, the maturity date is September 27, 2013.

However, Yayi ceased making the required payments after September 30, 2012, by failing to make the required payment on March 31, 2013. *See* Graff Supplemental Aff. **Exhibit K** at ¶ 10. Therefore, Yayi was in material breach as of March 31, 2013, the next payment date. Similarly, pursuant to Section 4.2 of the SPA, Yayi was required to make all required filings with the SEC as long as the Notes were still outstanding. However, after execution of the SPA, Yayi ceased filing with the SEC. Yayi's last filing occurred on August 15, 2012. *See*, Yayi International Inc., Retrieved from SEC EDGAR website, https://www.sec.gov/cgi-bin/browse-edgar?company=yayi&owner=exclude&action=get company (February 22, 2017). This constitutes a further material breach by Yayi.

Yayi has taken investor monies, abandoned its obligations to its U.S. investors and has "gone dark" to the market. Accordingly, due to Yayi's material breach of the Notes and SPA, the Investors are entitled to the full amount of the unpaid principal invested totaling $8,920,000.

### C.    The Investors Are Entitled To Interest On The Outstanding Notes

Plaintiffs further object to the Initial Recommendation that Plaintiffs not receive prejudgment interest on the outstanding principal.

#### 1.    Investors Are Entitled To Prejudgment Interest As A Contractual Right As Defendant Was Aware It Would Be Liable For Interest In The Notes

The pertinent language of Section 3 of the Notes states "[t]he Interest [] shall accrue on the outstanding principal amount of this Note from the date hereof until such principal amount is repaid in full at the rate of nine percent (9%) per annum, payable semiannually in arrears on the first and third calendar quarters (i.e., March 31 and September 30) commencing

6

March 31, 2011." Graff Supplemental Aff. Ex. A. Pursuant to this provision, the interest on the outstanding principal of the Notes ($8,920,000), calculated from the date of the Notes when interest commenced through February 19, 2016, is $4,337,319.45. [4] *See also* Doc. 41 Memorandum of Law in Support of Inquest at p. 8. Taking into account the prior payments made by Yayi ($1,613,109.00) on the accruing interest, Plaintiffs are owed $2,724,210.45 in interest through February 19, 2016 (or $3,577,597.85 through March 13, 2017). *See* Graff Supplemental Aff. **Exhibit L**.

Plaintiffs respectfully request that the Court enforce the Note provisions, which expressly provide for interest. It is well settled that Courts are bound to uphold and enforce the terms of a contract. *See Dupuis v. 424 E. 77th St. Owners Corp.*, 603022/04, 2005 N.Y. Misc. LEXIS 2349, at *6 (Sup. Ct. Sept. 12, 2005) ("This is an agreement which this Court is bound to enforce absent a conflict with public policy . . . .") (*citing In re Estate of Malloy*, 278 N.Y. 429 (1938) ("parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce"); *citing First Nat'l Stores Inc. v. Yellowstone Shopping Ctr. Inc.,* 290 N.Y.S.2d 721 (1968) (Where the parties obligations are clear, courts should enforce the contract terms in the interest of not undermining the "stability of contract obligations")). As detailed in the Inquest and previous filings, the Notes' provisions expressly provide for interest at a rate of nine percent (9%) per annum. Thus, the Court should uphold and enforce the provisions of the Notes concerning interest payments, and require Yayi to fulfill its obligations under the Notes by paying the required interest.

---

[4] Carrying forward the same rate, the accruing interest is $5,190,706.85 through March 13, 2017.

Plaintiffs put Yayi on sufficient notice through Plaintiffs' First Amended Complaint, as well as the original pleading (the initial complaint), Order to Show cause for Default Judgment with Affidavits in support thereof, and the Inquest requesting a judgment in the amount of the principal plus all accrued interest due and owed on the Notes.  *See* Doc. 23 at Complaint at ¶¶ 6, 7, 8, 10, 19, 22, 32; Affidavit of Christopher Ayers in Support of Default Judgment dated February 24, 2016, Doc. 31 at demand for judgment ¶ 2; Memorandum of Law in Support of Inquest, Doc. 41 at p. 7-8, 11, 14.  Thus, Plaintiffs expressly put Yayi on notice of the contractual damages sought in the actions.

Further, Yayi was also on notice of the amount of interest that would be awarded to Plaintiffs if it had defaulted on its obligations under the Notes.  Plaintiffs' original pleading (the initial complaint) as well as the First Amended Complaint, Order to Show Cause for Default Judgment, and Inquest, each identify the salient provisions of the Notes that provide for interest rates, calculations, and accrual periods.  Significantly, Yayi, as a signatory to the Notes, was fully aware of the interest provisions and its obligations to pay interest at nine percent (9%) per annum until it fully repaid the principal and accrued interest on the Notes.

Notably, this is interest owed to the Plaintiffs as a result of the contract between the parties, not statutorily as a matter law.  Courts routinely recognize the distinction between the two interest rates.

> New York's CPLR § 5004 provides for a 9% rate, but the parties may nevertheless agree to a different pre-judgment interest rate ... and if they do, the contract rate, rather than the C.P.L.R. rate, will apply. Thus, when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest trumps the rate provided under the CPLR.

*Geron v. Pali Holdings, Inc. (In re Pali Holdings, Inc.),* 491 B.R. 389, 393-94 (Bankr. S.D.N.Y. 2013) (citations omitted).  *See also Bollag v. Dresdner*, 495 N.Y.S.2d 560, 564 (Civ. Ct. 1985) ("There having been no testimony which would bar plaintiff from receiving statutory interest on a

8

judgment (as distinct from interest on a loan), any judgment to be based hereon shall bear interest at the statutory rate from the date of its entry.").

The interest on the outstanding Notes calculated from the date of the Notes, when interest commenced, through February 19, 2016, including deductions for prior payments is $2,724,210.45.   Defendant failed to pay Investors the monies owed pursuant to the Notes. Accordingly, the Plaintiffs are damaged in the amount of $11,644,210.45 inclusive of interest for breach of the Notes through February 19, 2016 (or $12,497,597.85 through March 13, 2017).  This amount puts the aggrieved Investors in the same position had Yayi complied with its payment obligations.

Further, Yayi would not be prejudiced if the Court awards Plaintiffs interest pursuant to the terms of the Notes.  Yayi, as a signatory to the Note, was fully aware of the interest provisions and its obligations to pay interest at nine percent (9%) per annum until Yayi fully repaid the principal and accrued interest on the Notes.  Indeed, the only parties that would be prejudiced are the Plaintiffs who are rightfully entitled not only to the principal amount due and owed under the Notes, but also the interest that has accrued yet remains unpaid.  Should the Court not award interest due and owing under the Notes, the Court would be rewarding Yayi for its failure to appear and participate in this litigation.  Equity does not favor Yayi.

### 2.   Interest May Be Awarded In This Matter Under Federal Rules Of Civil Procedure 54(c)

Yayi was on notice that Plaintiffs would seek interest on the outstanding Notes in the original Complaint filed on January 16, 2015.  Specifically, the conclusion or demand section of the original complaint stated "it is respectfully submitted that Plaintiffs' Motion for Summary Judgment in Lieu of Complaint must be granted against Defendant Yayi International Inc., in the sum of $8,920,000.00, together with **interest** thereof, all reasonable costs and expenses…." *See*

9

Doc. 1, Complaint ¶ 16 (emphasis added).   Nonetheless, Yayi still refused to pay its debt or

participate in this action.  The underlying theory behind FRCP 54(c) is that is that

> the defending party should be able  to decide on the basis of the
> relief requested in the **original pleading** whether to expend the time,
> effort, and money necessary to defend the action, it would be
> fundamentally unfair to have the complaint lead defendant to believe
> that only a certain type and dimension of relief was being sought
> and then, should defendant attempt to limit the scope and size of the
> potential judgment by not appearing or otherwise defaulting, allow
> the court to give a different type of relief or a larger damage award.

10 Charles Alan Wright, Arthur R, Miller, & Mary Kay Kane, *Federal Practice and Procedure*,

§ 2663 (1998) (footnote omitted) (emphasis added).

> The restriction on the award of relief in the first sentence of the rule
> most clearly is justified in the case of a completely nonappearing
> defendant.  That defendant receives only the **original complaint** and
> therefore is aware only of the prayer for relief set forth in that
> document.  The decision not to enter the action is based solely on
> the information in that pleading and defendant should be allowed to
> rely on it.

*Id*.

Under this theory, Yayi received the original pleading, reviewed the conclusion or

demand section, and consciously chose not to appear and allow a default to occur.  Accordingly,

because the "original pleading" put Yayi on notice that Plaintiffs would seek interest on the

outstanding Notes and Yayi still failed to answer or otherwise appear in this proceeding, Plaintiffs

are entitled to the accruing interest on the outstanding Notes, pursuant to Section 3 at 9%, or

alternatively in the form of statutory prejudgment interest pursuant to CPLR 5001 at nine percent

(9%) interest.

Furthermore, Plaintiffs put the Defendant on notice of its intent to seek interest in

multiple documents filed and served in this action.  At least one court in this district has refused to

rule out the possibility of permitting increased damages on default when the notice of default

contains notice of the increase.  *See Ipec, Inc. v. Magenta Films, Ltd.*, No. 81 Civ. 3341 (MJL),

1983 U.S. Dist. LEXIS 19800 (S.D.N.Y. Jan. 25, 1983).  Similarly, the Seventh Circuit found that

a proposed order of default served on defendant provided adequate notice of increase of potential

liability and was tantamount to amendment of prayer for relief.  *Appleton Elec. Co. v. Graves

Truck Line, Inc.*, 635 F.2d 603, 610–611 (7th Cir. 1980).  The Second Circuit even acknowledged

the possibility of damages in a default action greater than what is stated in the demand for relief:

> We do not mean to suggest that it is ever wise or prudent for a
> defendant to default in reliance on the demand clause.
> Notwithstanding the limited protections afforded by Rule 54(c), a
> judgment in a civil case may result in significant and unforeseen
> adverse consequences to the unwary defendant.  Moreover, in
> certain circumstances, "a trial judge may enter a default judgment
> even though a plaintiff's claim is not for a sum certain."  We need
> not decide what limitations, if any, Rule 54(c) would impose in that
> event.

*Silge v. Merz,* 510 F.3d 157, 160 n.4 (2d Cir. 2007) (quoting *Appleton,* citation omitted).

Here, Plaintiffs provided Yayi notice of their intent to seek accruing interest on the

Notes prior to the entry of default.  As discussed above, Plaintiffs explicitly requested interest in

the conclusion/demand for relief of the original pleading.  Plaintiffs also identified their right and

intent to seek interest in the First Amended Complaint.  *See* Doc. 23, Complaint ¶¶ 6, 7, 8, 10, 19,

22, 32.  In the demand for relief, Plaintiffs also requested that the Court "enter a judgment in

Plaintiffs' favor on all counts of this Complaint."  Plaintiffs' first "count" or cause of action

specifically stated that "Investors [suffered damage] in the amount of $8,920,000.00, together with

interest thereof."  *See* Doc. 23, Complaint ¶ 22.  After filing the Amended Complaint, Defendant

still refused to appear or defend itself in this action.

Plaintiffs also put Defendant on notice of their intent to seek interest in the Order to

Show Cause for Default Judgment.  "Plaintiffs respectfully request that this Court … award

Plaintiffs $13,257,319.45 (principal amount of $8,920,000 together with interest in the amount of

$4,337,319.45 as of February 19, 2016), for monies due and owed under the Notes, plus accruing

11

interest at the contract rate of 9% per annum." *See* Affidavit of Christopher Ayers dated February 24, 2016, Doc. 31 at demand for judgment ¶ 2. Thus, before entry of the judgment, Defendant had yet another opportunity to appear and object to the relief sought by the Plaintiffs. Defendant did not do so. In *Silge,* the court refused to award prejudgment interest when it was first sought <u>after a default</u>. *Silge*, 510 F.3d 162. However, the situation at hand is distinguishable because Plaintiffs requested interest on the accruing Notes not once, but three times, prior to the entry of default. This notice, prior to entry of default, is sufficient to allow damages on the accruing interest on the Notes.

> Before that default judgment, Pauta served Aena with the motion for default judgment which demanded sums certain and afforded Aena an opportunity to object. Together, the complaint and the motion for default judgment gave Aena notice before it was "too late in the day for defendants to undo the consequences of their prior decision to default." Had Pauta's first demand for a sum certain appeared after the entry of default judgment at the inquest phase, as in *Silge*, Rule 54(c) would bar Pauta from collecting damages. But because Aena received prior notice of sums certain that did not depart from the types of relief demanded in the Complaint, Rule 54(c) does not preclude an award of damages, so long as they are proven at an inquest.

*Pauta v. Aena Mech. Corp.,* No. 11 cv 6374, 2014 U.S. Dist. LEXIS 108683, at *5-6, 2014 WL 3855025 (S.D.N.Y. July 25, 2014) (citations omitted). Here, like *Pauta*, Yayi had noticed "before it was too late in the day for [Defendant] to undo the consequences of their prior decision to default." Accordingly, Plaintiffs respectfully object to the Initial Recommendation's finding of no interest damages and respectfully request that the Court enter an award of prejudgment interest in the amount discussed below, either pursuant to the terms of the Notes or as a right under New York Law.

3.      **Prejudgment Interest For Breach Of Contract Is Mandatory Under New York Law**

Prejudgment interest should be granted as a right, under New York law.  Pursuant to the terms of the Notes, New York law applies to this matter.  *See* Graff Supplement Aff. **Exhibit B** at ¶ 17.  As a result, "the New York interest rate applies to the interest sought." *Adrian v. Town of Yorktown*, 620 F.3d 104, 107 (2d Cir. 2010); *accord N. Bloom & Son (Antiques), Ltd. v. Skelly*, 673 F. Supp. 1260, 1269 (S.D.N.Y. 1987) ("In a diversity case, prejudgment interest is controlled by the rule of the jurisdiction whose law determines liability.") (citation omitted).

Pursuant to New York's Civil Practice Law and Rules ("CPLR") § 5001(a), "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . ."  Pursuant to CPLR 5004, the amount of "pre-judgment interest to be awarded pursuant to a breach of contract claim is nine percent per annum." *Turner Constr. Co. v. Am. Mfrs. Mut. Ins. Co.*, 485 F. Supp. 2d 480, 490 (S.D.N.Y. 2007).  *See also* CPLR § 5004.  Notably prejudgment interest rate under New York law and the interest rate under the terms of the Notes are the same – 9% per annum.  "[U]nder New York law, the awarding of interest on breach of contract claims . . . is **non-discretionary**." *Id.* (emphasis added); s*ee United States Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) ("Under New York law . . . a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right."); *Langenberg v. Sofair*, No. 03-CV-8339, 2006 U.S. Dist. LEXIS 88157, 2006 WL 3518197, at *7 (S.D.N.Y. Dec. 7, 2006) (awarding prejudgment interest pursuant to New York law in a breach of contract case).

When calculating the interest due, it "shall be computed from the earliest ascertainable date the cause of action existed.  "CPLR § 5001(b).  "In New York, a breach of contract cause of action accrues at the time of the breach." *Ely-Cruikshank Co. v. Bank of Montreal*, 599 N.Y.S.2d 501 (1993) (citations omitted).  The earliest ascertainable date the cause

13

of action existed in this matter is March 31, 2013, when Yayi failed to make the interest payment it was obligated to pay under the Notes.  Should the Court not award contractual interest on the Notes, Plaintiffs should alternatively be granted statutory prejudgment interest in the amount of $1,562,899.77 calculated at 9% on the outstanding principal of $8,920,000.00 from March 31, 2013 (date of the first breach) through March 13, 2017 and inclusive of the deductions for prior payments.  *See* Graff Supplemental Aff. **Exhibit L**.  Therefore, in the alternative, the Court should recommend that Plaintiffs be awarded prejudgment interest as a matter of right under New York law.  Accordingly, under this measure of damages, the Court should recommend that Plaintiffs are entitled to a total of $10,482,899.77, including principal and interest through March 13, 2017.

> **D.   In The Alternative, If The Investors Are Not Entitled To Interest On The Outstanding Notes, Then They Respectfully Request Leave To Amend The First Amended Complaint To Include A Request For Prejudgment Interest In The Demand For Relief.**

If this Court sees fit to decline to grant interest on the Notes, in the alternative, Plaintiffs respectfully request leave to amend the First Amended Complaint to include the specific demand in the *ad damnum* clause for accruing interest on the outstanding Notes.  "Clean" and "redlined" versions of Plaintiffs' proposed Second Amended Complaint are attached as **Exhibits P** and **Q** respectively, to the accompanying Graff Supplemental Aff.

> **1.   Legal Standard.**

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading . . . with . . . the court's leave," and "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  S*ee Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave

sought should, as the rules require, be "freely given."); *Poloron Prods. v. Lybrand Ross Bros. & Montgomery,* 72 F.R.D. 556 (S.D.N.Y. 1976).

"The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. N.Y. 1995) (*quoting Foman v. Davis*, 371 U.S. 178, 182, (1962). Accordingly,

> in the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , etc. -- the leave sought should, as the rules require, be "freely given."

*Id.* (*quoting Foman v. Davis*, 371 U.S. 178, 182, (1962).

## 2. There Is No Undue Delay Or Bad Faith.

Here, there is no undue delay or bad faith associated with Plaintiffs' motion to amend the First Amended Complaint. After being provided with notice that Plaintiffs did not specifically demand interest in the *ad damnum* clause of Plaintiffs' First Amended Complaint by way of Initial Recommendation, Plaintiffs requested leave to amend ***immediately*** in response to the Initial Recommendation. *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 81 (E.D.N.Y. 2011) ("In sum, the Court sees no evidence of bad faith, undue delay, or prejudice.... Rather, the Defendants identified a problem with the Plaintiffs pleading in its motion to set aside the entry of default, and the Plaintiffs ***immediately*** sought to amend the complaint to rectify the problem. Accordingly, these factors weigh against denying the Plaintiffs' motion to amend.") (emphasis added).

Given the immediacy that Plaintiffs' request for leave to amend upon notice, the temporal relationship between the filing of the complaint and Plaintiffs' motion for leave to amend does not constitute undue delay or bad faith under the liberal standard of Fed. R. Civ. P. 15(a)(2).

"Delay alone unaccompanied by such a 'declared reason' does not usually warrant denial of leave to amend." *Rachman Bag*, 46 F.3d at 234-235 (citation omitted); *Moreno-Godoy v. Gallet Dreyer & Berkey, LLP*, 14 Civ. 7082 (PAE) (JCF), 2016 U.S. Dist. LEXIS 137843, *13 (S.D.N.Y. Oct. 4, 2016) ("[C]ourts routinely grant leave to amend where the delay was much longer than two years, even without a satisfactory excuse.") (*citing Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) (holding no abuse of discretion in grant of leave to amend after seven year delay, in absence of prejudice); *Rachman Bag*, 46 F.3d at 235 (giving leave to amend properly granted after four-year delay); *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (holding amendment allowed four years after complaint filed)).  Since Plaintiffs were not on notice of the drafting error until the Initial Recommendation was filed, Plaintiffs could not cure it earlier.

Moreover, "under the liberal standard of Rule 15(a), leave to amend may be appropriate at any stage of litigation." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010) (*citing* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1488 at 652-57 (2d ed. 1990) (noting that courts have granted leave to amend "following discovery; after a pretrial conference; at a hearing on a motion to dismiss or for summary judgment; after a motion to dismiss has been granted but before the order of dismissal has been entered; when the case is on the trial calendar and has been set for a hearing by the district court; at the beginning, during, and at the close of trial; after a judgment has been entered; and even on remand following an appeal")).  Specifically, "leave to amend a complaint may be properly granted where there has been a default." *Feliciano v. Circulation Promotion & Resources, Inc.*, 98 Civ. 8727 (JGK), 1999 U.S. Dist. LEXIS 19020, *2, 98 Civ. 8727 (JGK), 1999 WL 1102798 (S.D.N.Y. Dec. 1, 1999).   Leave may be granted to amend a complaint even to conform to the evidence adduced at an inquest hearing.  *See Aetna Casualty & Surety Co. v.*

*International Trading Group, Ltd.*, 1988 U.S. Dist. LEXIS 6557, *6, 1988 WL 73396 (S.D.N.Y. July 5, 1988).

Here, Plaintiffs were unaware of the drafting error that was identified in the Initial Recommendation, and upon notice, immediately request for leave to amend the First Amended Complaint.  Under the liberal standard of Fed. R. Civ. P. 15(a)(2), these circumstances does not constitute undue delay or bad faith.

### 3.  Plaintiffs' Proposed Amendment Is Not Futile.

"An amendment is futile if the complaint's allegations would not withstand a Rule 12(b)(6) motion to dismiss….  In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Best v. Schneider*, CV-12-6142 (NGG) (MDG), 2016 U.S. Dist. LEXIS 44943, *10-11 (E.D.N.Y. Mar. 30, 2016) (citations and quotations omitted).  As set forth in *supra* C(2) and C(3), Plaintiffs are either entitled to interest at a rate nine percent (9%) per annum as a contractual right pursuant to Section 3 of the Notes (*see* Graff Supplemental Aff. **Exhibit B,** at Section 3), or Plaintiffs are entitled to prejudgment interest at a rate nine percent (9%) per annum pursuant to C.P.L.R. 5001(a) and 5004.

### 4.  There Is No Repeated Failure To Cure Deficiencies By Amendments Previously Allowed.

Through this proposed amendment, Plaintiffs do not seek to cure previous "deficiencies", but rather move to amend to seek "additional relief" that was not specifically demanded, as identified in the Initial Recommendation.  *See Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 386 (D. Conn. 2008) ("[Plaintiff] does not seek to cure any previous deficiencies, but rather moves to amend to seek 'additional relief.'  This factor is therefore irrelevant to the consideration of [Plaintiff's] motion for leave to file its Proposed

17

Second Amended Complaint."). Therefore, this factor is irrelevant to the consideration of Plaintiffs' proposed amendment.

Should the Court view Plaintiffs' proposed amendment as an attempt to cure a deficiency – which it should not – this factor still supports the requested amendment. The issue indicated in the Initial Recommendation (i.e. failure to demand interest) was not present when Plaintiffs first moved for leave to file their original pleading, which did in fact demand interest (*see supra* C(1)). *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599 (5th Cir. 1981). The decision in *Dussouy* is instructive, holding that:

> The final factor relating to the movant's conduct is whether he has repeatedly failed to cure deficiencies by amendments previously allowed. Although Dussouy did fail to cure the deficiencies in his original complaint with his first amendment, his second amendment solved the problem. The current deficiencies perceived by the trial court arise out of Dussouy's changed theory of the case upon his discovery that Allstate did not conspire with Gulf Coast; *they are not simply a continuation of the deficiencies at issue in the initial challenges to Dussouy's complaint*. Dussouy cannot be said to have repeatedly failed to cure *this* perceived deficiency.

*Id.* (emphasis added).

Similar to *Dussouy*, there is no "continuation of [a] deficienc[y]" that Plaintiffs "repeatedly failed to cure." Here, the issue identified in the Initial Recommendation, "this perceived deficiency", only arose after Plaintiffs' filed their First Amended Complaint. Additionally, as noted, Plaintiffs could not cure the clerical error earlier because they were not aware of the error until the Initial Recommendation was filed.

     **5.**     **Yayi Will Not Be Prejudiced By Plaintiffs' Proposed Amended Pleading, But To The Contrary, Should The Court Deny The Proposed Amendment, The Investors Would Be Severely Prejudiced.**

Yayi will not be prejudiced by Plaintiffs' proposed amended pleading. "Whether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to the undue prejudice analysis." *Agerbrink v. Model*

18

*Serv*. LLC, 155 F. Supp. 3d 448, 455-456 (S.D.N.Y. 2016) (*citing Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. N.Y. 2000)).  Yayi had prior notice of Plaintiffs' entitlement to interest because the 9% interest rate is a key term found on the face of the Notes. *See* Graff Supplemental Aff. **Exhibit B** at Section 3.  The First Amended Complaint refers to and quotes Section 3 of the Notes.  *See* Doc. 23 at Complaint ¶¶ 6, 7, 8, 10, 19, 22, 32.  Further, the proposed amended pleading, which specifically demands interest due and owing under the Notes, arises from the same transaction and is based on the same events underlying the causes of action asserted in the First Amended Complaint.  *Hosking v. TPG Capital Mgmt., L.P*, 535 B.R. 543, 595 (Bankr. S.D.N.Y. 2015) ("[T]he First Amended Complaint does not unduly prejudice the Defendants.  The Additional Claims are based on the same events underlying the causes of action asserted in the original Complaint and involve similar elements, thus requiring little incremental discovery or further delay to resolve.").

For these same reasons, and given that Yayi has yet to appear, no discovery has taken place, and no trial is set, Plaintiffs' proposed amended pleading will not require Yayi to expend additional resources to conduct discovery and prepare for trial.  *Charles v. New York City Police Dep't*, 96 Civ. 9757 (WHP) (THK), 1999 U.S. Dist. LEXIS 14274, *7, 1999 WL 717300 (S.D.N.Y. Sept. 15, 1999).  Additionally, the proposed amended pleading will not significantly delay the resolution of this case.  *Charles v. New York City Police Dep't*, 1999 U.S. Dist. LEXIS 14274, at *8 ("Although delay is a relevant consideration in the prejudice analysis, 'mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'") (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. N.Y. 1993)).

Lastly, in determining whether prejudice is "undue," courts engage in a "balancing process, weighing any potential prejudice to the opposing party against the prejudice that the

moving party would experience if the amendment were denied." *Agerbrink*, 155 F. Supp. 3d at 454.  Given that Yayi has yet to even appear in this proceeding, it faces no prejudice if the proposed amendment were granted.  In fact, Yayi would receive a benefit because it would have the opportunity to respond to the proposed amendment, and the entry of default on that First Amended Complaint would be mooted.  *See infra* 6.  Meanwhile, should the Court deny the proposed amendment, the Investors would be severely prejudiced, being barred from obtaining interest at least in the amount of $3,176,008.77 to which they are rightfully entitled.  *See supra* C(2) and C(3).  Thus, the Court should grant Plaintiffs' request for leave to amend the First Amended Complaint.

### 6. The Court Should Also Set Aside Entry Of Default On The First Amended Statement Of Claim As Moot Pursuant To Fed. R. Civ. P. 55(C).

Once an amended complaint is filed and the original complaint is superseded, an entry of default on the original complaint pleading is mooted.  *See Allstate Ins. Co. v. Yadgarov*, No. 11 Civ. 6187 (PKC) (VMS), 2014 U.S. Dist. LEXIS 30068, *21, Fn. 12, *42 (E.D.N.Y. Feb. 10, 2014) (collecting cases).  Under these circumstances, district courts routinely set aside entries of defaults as moot when plaintiffs file amended complaints.  *Id.*  Thus, should the Court allow Plaintiffs to file its proposed amendment, the Court should also set aside entry of default on the First Amended Statement of Claim as moot pursuant to Fed. R. Civ. P. 55(c).  If Plaintiffs are granted leave to file the second amended complaint, Plaintiffs will be required to serve Defendant the operative pleading.  As such, Defendant will have another opportunity to appear and respond to the newly filed pleading.

Fed. R. Civ. P. 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c). "Rule 60(b) governs motions to set aside 'final judgments.'  A judgment is 'final,' however, only

20

'when there is nothing left for the Court to adjudicate.'"   *Murray Eng'g, P.C. v. Windermere Props. LLC*, 12 Civ. 0052 (JPO), 2013 U.S. Dist. LEXIS 61877, *10-11, 2013 WL 1809637 (S.D.N.Y. Apr. 30, 2013) (citations omitted).

When an inquest on damages has been ordered but has not been completed, as is the case here, no final judgment has been entered and Rule 55(c) applies, not Rule 60(b).   *See Murray Eng'g.*, 2013 U.S. Dist. LEXIS 61877, at *10, 2013 WL 1809637, at *3 (*citing Roberts v. Keith*, No. 04 Civ. 10079 (CSH), 2007 U.S. Dist. LEXIS 68811, 2007 WL 2712853, at *2 (S.D.N.Y. Sept. 18, 2007); *SoloSpar, Inc. v. Equinox Fitness Ctr.*, No. 96 Civ. 9449 (KMW), 1998 U.S. Dist. LEXIS 8602, 1998 WL 386179, at *1 n.1 (S.D.N.Y. July 7, 1998)).   Indeed, it is hornbook law that "a default judgment cannot be entered until the amount of damages has been ascertained."   *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2d Cir. 1993).   The amount of damages has not been ascertained here, hence a "final default judgment" has not been entered. Thus, Rule 55(c) applies, not Rule 60(b).

Should the Court deny the proposed amendment and deny setting aside the entry of default, this would undoubtedly result in a harsh or unfair result.   Denying such relief would result in severe prejudice to the Investors, as they would be barred from obtaining interest at least in the amount of $3,176,008.77 to which it is rightfully entitled.   *See supra* sections C(2) and C(3). Thus, the Court should set aside the entry of default upon Plaintiffs' filing of the proposed amendment.

### E.   Attorneys' Fees and Costs

Section 12 of the Notes also states that "[t]he Company agrees that, in the Event of Default, to reimburse the Holder for all reasonable costs and expenses (including reasonable legal fees of one counsel) incurred in connection with the enforcement and collection of this Note." Graff Supplemental Aff. at **Exhibit B**.   Similarly, Section 6.9 of the SPA also calls for the

21

reimbursement of reasonable attorneys' fees and other costs and expenses incurred.  *Id.* at **Exhibit C**.

The Initial Recommendation found that evidence was not presented "to show [a] connection between the Note and SPA, pursuant to which the plaintiff acts as the investors' representative or that the investors the plaintiff claims it represents are the investors who executed the SPA."  The Initial Recommendation at p. 26.  As shown in **Exhibits A** and **B** to the Graff Supplemental Aff., the Investors or Note Holders are connected via their signatures on Exhibit A to the SPA and listed as noteholders on each individual Note.  Furthermore, pursuant to the Memorandum, Plaintiff Euro Pacific serves as the "Placement Agent and Investor Representative":

> Euro Pacific Capital Inc. (the "Agent").  It is expected that a significant number of Investors may participate in the offering.   In order to ensure **the enforcement of each Investor's rights** under the various Offering documents, and to ease the resulting administrative burden associated with a large number of investors, each **Investor will appoint the Agent as its agent to act on such Investor's behalf under the Offering documents**.

Graff Supplemental Aff. **Exhibit D** at p. 14 (emphasis added).  Therefore, Euro Pacific was appointed by the Investors to act on their behalf and as such is entitled to seek reasonable costs and fees associated with the enforcement of their rights pursuant to the Notes and SPA.

As a result of the successful prosecution of Defendant's breach of the Notes and its efforts to recover funds invested in Yayi, Euro Pacific incurred attorneys' fees and costs.  The total fees and costs requested in the Inquest is $65,937.02.  *See* Affirmation of Christopher Ayers dated July 8, 2016 ¶ 8 (Doc. 42).  Annexed to the Graff Supplemental Aff. as **Exhibit M** is a detailed chart summarizing the total fees and costs.  The billing rates for the attorneys, law clerks, and paralegals working on the instant litigation ranged from $135 per hour for a paralegal to $375 per hour for a senior partner.  *Id.* at ¶ 19.  These rates constitute reasonable rates because they are not

only a substantial discount from ordinary billing rates for Anderson Kill P.C., but are also a substantial discount for attorneys practicing in New York City. *See THREE60 LLC vs. Local Ocean Holdings, LLC,* Index No. 652188/12, 2014 N.Y. Misc. LEXIS 5819, *1 (Sup. Ct. Feb. 20, 2014) (finding partners with rates between $695-$725 per hour; senior associates rates between $525-$560 per hour; and, other associates between $395-$510 per hour, for a large Manhattan commercial litigation law firm reasonable). The fees requested are reasonable in light of the substantial work that was conducted on this matter. This work included, but is not limited to, reviewing all the transaction documents, as well as conducting background research on Yayi and all Investors named in the action, drafting a comprehensive complaint, preparing an Order to Show Cause for Default, preparing for and attending a hearing on default, and filing an inquest with supporting affidavits. Graff Supplemental Aff. at ¶ 18. Furthermore, all attorneys who worked on this matter are experienced commercial litigators ranging from shareholders to associates. *Id*. at **Exhibit O**. Specifically, the focus of this commercial litigation group representing U.S. investors in the collection and enforcement of judgments against foreign companies that have "gone dark," on U.S. exchanges. *Id*. at ¶ 22.

The Initial Recommendation acknowledges that the fee shifting provisions of the Notes and SPA call for the reasonable costs and expenses "of one counsel." While not defined in the transaction documents, "counsel" is defined as "one or more lawyers who represent a client." "Black's Law Dictionary," Bryan A. Garner, Abridged Ninth Edition, 2010. It is well settled law that courts should interpret the plain meaning of the words and phrases used in a contract. "A sound method for determining the plain meaning of words is to look at their dictionary definitions." *In re Delta Air Lines, Inc*., 381 B.R. 57, 64-65 (Bankr. S.D.N.Y. 2008); *see also Mazzola v. Cnty. of Suffolk*, 533 N.Y.S.2d 297, 297 (App. Div. 1988) ("[I]t is common practice for the courts of this State to refer to the dictionary to determine the plain and ordinary meaning of

words to a contract."). The plain meaning of the word "counsel" can refer to a collective group of attorneys for a client. The parties here did not intend for them to be represented (and thus compensated) by a sole singular attorney, particularly in an action involving complex legal and transactional documents. It is illogical to expect a brokerage firm such as Euro Pacific or a multi-million dollar international company such as Yayi to seek representation of only a singular attorney. On the other hand, the more reasonable interpretation of this provision is that the parties intended to be represented by one collective counsel or one law firm, and as such would be reimbursed for all reasonable costs and expenses in connection with the enforcement and collection of the Notes from said firm. Accordingly, Plaintiffs are entitled to the full $65,937.02 for reasonable attorneys' fees and costs incurred with the enforcement of the Notes.

## **CONCLUSION**

Wherefore, Plaintiffs respectfully request the Court receive the supplemented Inquest proofs and enter an order for damages in the amount of $12,497,597.85[5] on the principal, and interest on the Notes through March 13, 2017 and $65,937.02 for reasonable attorneys' fees and costs incurred with the enforcement of the Notes.

Alternatively, should the Court accept that "one counsel" refers to reimbursement for only one attorney, Plaintiffs respectfully request that the Court award Plaintiffs' fees for the total hours worked by the attorneys on this matter, 232.4 hours, all at the lowest hourly attorney rate, $250/hour, for a total award of $58,100.00.

Alternatively, should the Court rule that "one counsel" refers to reimbursement for only one attorney, Plaintiffs respectfully request that the Court award Plaintiffs' fees for the attorney billing the most hours, Alexander Litt, for a total of $17,875.00.

---

[5] This includes the outstanding principal on the Notes ($8,920,000), plus interest calculated from the date of the Notes when interest commenced through March 13, 2017, ($5,190,706.85) less the interest payments from Yayi ($1,613,109.00).

Alternatively, should the Court award Plaintiffs statutory prejudgment interest as a matter right under New York law, Plaintiffs respectfully request the Court receive the supplemented Inquest proofs and enter an order for damages in the amount of $10,482,899.77[6] on the principal and interest on the Notes through March 13, 2017 and $65,937.02 for reasonable attorneys' fees and costs incurred with the enforcement of the Notes.

Alternatively, should the Court recommend an award of no interest, Plaintiffs respectfully request that the Court grant leave to file the proposed Second Amended Complaint.

Plaintiffs further respectfully request a hearing on this matter should the Court require additional information.

Dated:  March 16, 2017                         Respectfully submitted,
      New York, New York
                                          **ANDERSON KILL P.C.**

                                          /s/ David Graff
                                          David Graff, Esq.
                                          Christopher Ayers, Esq.
                                          1251 Avenue of the Americas
                                          New York, New York  10020
                                          Tel.:  212-278-1000
                                          Fax:  212-278-1733

                                          *Attorneys for Plaintiffs*

---

[6] This includes the outstanding principal on the Notes ($8,920,000), plus interest calculated from the date of the breach of the Notes on March 31, 2013 through March 13, 2017, ($3,176,008.77) less the interest payments from Yayi ($1,613,109.00).